Opinion by WILSON, J. It was stipulated that the landed net weight at the time of importation of the 193 bales of wool herein, entered for warehouse, was 68,729 pounds; that the landed net weight of the 125 bales withdrawn from warehouse for consumption duty paid was 43,856 pounds; that the landed net weight of the 68 bales withdrawn for export in bond was 24,873 pounds; and, further, that the said warehouse entry may be reliquidated on the basis of 68,729 pounds net weight, with allocation of 43,856 pounds to the 125 bales withdrawn for consumption duty paid and 24,873 pounds to the 68 bales covered by said export entry. The protest was sustained accordingly.

**No. 62398.**—Wool Distributing Corp. *v.* United States, protest 307860–K (Boston).

Opinion by WILSON, J. It was stipulated that the landed net weight at the time of importation of the 190 bales of wool herein, entered for warehouse, was 66,083 pounds; that the landed net weight of the 50 bales withdrawn from warehouse for consumption duty paid was 16,395 pounds; that the landed net weight of the 140 bales transferred in bond was 49,688 pounds; and, further, that the said warehouse entry may be reliquidated on the basis of 66,083 pounds net weight, with allocation of 16,395 pounds to the 50 bales withdrawn for consumption duty paid and 49,688 pounds to the 140 bales covered by said transfer entry. The protest was sustained accordingly.

BEFORE THE SECOND DIVISION, OCTOBER 24, 1958

**No. 62399.**—G. A. Westphal Co., Inc., and Gehrig Hoban & Co., Inc. *v.* United States, protest 310615–K (New York).

Opinion by RAO, J. In accordance with stipulation of counsel that the merchandise consists of gift tags, composed wholly or in chief value of paper, lithographically printed, not over twelve one-thousandths of an inch in thickness, which are not gift or social cards, the claim of the plaintiffs was sustained.

**No. 62400.**—G. A. Westphal Co., Inc., and Gehrig Hoban & Co., Inc., et al. *v.* United States, protests 319303–K, etc. (New York).

Opinion by Rao, J. In accordance with stipulation of counsel that the merchandise consists of Christmas tie-ons the same in all material respects as those involved in Abstract 61508, the claim of the plaintiffs was sustained.

October 22, 1958

No. 62401.—Elite Sales Corp. v. United States, protest 290957–K.—Protest abandoned September 16, 1958. (Not published.) (Initial No. 246577–K.) Plaintiff's application for rehearing granted.

BEFORE THE FIRST DIVISION, OCTOBER 28, 1958

No. 62402.—Frank P. Dow Co., Inc., and Paramount Pictures Corporation v. United States, protests 293309–K and 293310–K (Los Angeles).

OLIVER, Chief Judge: These two protests relate to motion-picture film negatives imported by Paramount Pictures Corporation. The collector assessed duty thereon at the rate of 2 cents per linear foot under the provision in paragraph 1551 of the Tariff Act of 1930 for "photographic-film negatives, imported in any form, for use in any way in connection with moving-picture exhibits, or for making or reproducing pictures for such exhibits, exposed but not developed." Plaintiffs claim that the merchandise is dutiable at only 1 cent per linear foot under the proviso in paragraph 1551, reading as follows:

* * * *Provided*, That upon the importation of photographic and motion-picture film or film negatives taken from the United States and exposed in a foreign country by an American producer of motion pictures operating temporarily in said foreign country in the course of production of a picture 60 per centum or more of which is made in the United States the duty shall be 1 cent per linear foot, and the Secretary of the Treasury shall prescribe such rules and regulations as may be necessary for the entry of such films or film negatives under this proviso.

Seventeen entries are involved herein, covering an aggregate quantity of approximately 50,000 feet of film. Defendant's reference, in counsel's brief, to 100,411 feet is not acceptable. That amount appears to have been taken from an affidavit (plaintiffs' exhibit 3), which was received in evidence only to show compliance with customs regulations and "not to the condition contained therein" (R. 41).

Two witnesses testified. Both are associated with Paramount Pictures Corporation. The first witness was the director of the department of transparency and special photography effects. His duties include the preparation of scenographs of proposed pictures, which requires sending photograph units or teams to foreign countries where backgrounds are photographed. The exposed film is returned to this country and developed for ultimate use in producing motion pictures. The witness' testimony shows that Paramount Pictures Corporation is an American producer of motion pictures, that the film negatives in question